UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| KATHLEEN A. HAGAN, JOSEPH V. PRIETO, RICHARD A. PETERSON, and GILBERTO GALICIA, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 13-3357 |
| PATRICK J. QUINN, JEROME STERMER, and VELISHA HADDOX, | ) ) ) ) ) | |
| Defendants. | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

This cause is before the Court on the Motion to Dismiss Plaintiffs' Complaint filed by Defendants Patrick J. Quinn, Jerome Stermer, and Velisha Haddox. Defendants' Motion to Dismiss is GRANTED as to Plaintiffs' federal claim. As a matter of law, Plaintiffs' lawsuit to protect their jobs was not constitutionally protected speech. In any event, Defendants are entitled to qualified immunity from damages. Further, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claim.

# I. BACKGROUND

## A. Plaintiffs' Underlying Lawsuit

Plaintiffs Kathleen Hagan, Joseph Prieto, Richard Peterson, and Gilberto Galicia are former arbitrators of the Illinois Workers' Compensation Commission.  According to Plaintiffs, many Illinois media outlets published articles in 2011 suggesting there were problems with the Illinois workers' compensation system, and the media coverage generated significant public interest on the subject that eventually prompted action at the Illinois General Assembly.  (Compl. ¶¶ 11–12.)  In addition, various individuals and interest groups directly contacted members of the General Assembly and the Governor to voice concerns about the workers' compensation system, ultimately leading to the enactment of Public Act 97-18.  (Compl. ¶ 14.)

On June 28, 2011, Governor Quinn signed Public Act 97-18 into law.  The Act provided several changes to the workers' compensation system, including a provision requiring the terms of employment of all arbitrators to terminate on July 1, 2011.  (Compl. ¶¶ 17, 23.)  The Act further provided that all arbitrators shall be

appointed initially by the Governor.[1] (Compl. ¶ 22; see also 820 ILCS 305/14.)

At the time the Act was signed, Plaintiffs were all employed as arbitrators for the Illinois Workers' Compensation Commission. (Compl. ¶¶ 7–10.) On July 12, 2011, Plaintiffs, along with Peter Akemann, filed a three-count Complaint under 42 U.S.C. § 1983 against the Governor and the Chairman and Commissioners of the Workers' Compensation Commission. (Compl. ¶ 20; see also Hagan v. Quinn, No. 11-CV-3213, 2014 WL 3052631 (C.D. Ill. July 7, 2014) (the "underlying lawsuit" or "underlying complaint").

Plaintiffs' underlying complaint comprised three claims. In Count I, Plaintiffs alleged that the termination of their employment as provided under Public Act 97-18 deprived them of a property interest in their jobs without due process of law. Hagan, No. 11-CV-3213, 2014 WL 3052631, at *1. Count I sought compensatory damages and an injunction "prohibiting Defendants from removing Plaintiffs from their office or from appointing any other person to

---

[1] Since amended, this provision now authorizes the Governor to appoint all arbitrators with advice and consent from the Illinois Senate. See 820 ILCS 305/14.

that office, or from taking any other action in retaliation for the Plaintiffs's protection of their civil rights in this cause." (Underlying Complaint, p. 7.) Count II sought the same relief, alleging that Plaintiffs lost their liberty interests in their reputations and good names without due process of law due to the contents of a press release issued by Governor Quinn the day he signed Public Act 97-18 into law. Id. at pp. 7-9. In Count III, Plaintiffs asked the Court to declare Public Act 97-18 unconstitutional as to them because the Act denied them their property interest without due process of law. Id. at p. 10.

Plaintiffs' underlying lawsuit was originally assigned to this Court. This Court denied Plaintiffs' motion for a preliminary injunction, reasoning that Plaintiffs had little likelihood of success, given that the legislative process was all the process to which they were due before the terms and conditions of their jobs were changed by legislation. (Underlying lawsuit, 7/29/2011 Order.) However, this Court did allow the underlying lawsuit to survive a motion to dismiss for further development of the record. (Underlying lawsuit, 1/19/12 Order.) After reassignment to United States District Judge Colin S. Bruce, Plaintiffs' underlying lawsuit was dismissed on

summary judgment, Judge Bruce concluding that the legislative process was all the process due Plaintiffs. Hagan, No. 11-CV-3213, 2014 WL 3052631. By that time, Plaintiffs had conceded the dismissal of their liberty interest claim (Count II). The underlying lawsuit is now on appeal and has been consolidated with another appeal from the Southern District which reached the same conclusion as Judge Bruce. Dibble v. Quinn and Akemann v. Quinn, Appellate Cases 14-2328 and 14-2746 (7th Circuit).[2]

**B.   The Present Lawsuit**

As provided by Public Act 97-18, Plaintiffs continued to work as incumbent arbitrators, despite the legislative termination of their terms of employment, until Governor Quinn decided against reappointing them on October 14, 2011. (Compl. ¶¶ 23, 24.) Plaintiffs allege that Governor Quinn made this decision in conjunction with Defendant Stermer, Governor Quinn's Chief of Staff, and Defendant Haddox, an advisor to Governor Quinn. (Compl. ¶¶ 25; see also Compl. ¶¶ 5–6.) According to Plaintiffs,

---

[2] Defendants do not argue that the underlying suit was baseless. *See, e.g.,* Geske & Sons, Inc. v. N.L.R.B., 103 F.3d 1366 (7th Cir. 1997)("[T]he First Amendment protects only well-founded lawsuits."); *see also* Akemann v. Quinn, 2014 IL App (4th) 130867 ("The Illinois Supreme Court has consistently held, '[w]here an office is created by the legislature it is wholly within the power of that body, who may change the length of term or mode of appointment or abolish the office.")(*citing* Higgins v. Sweitzer, 291 Ill. 551, 554, 126 N.E. 207, 208 (1920)).

"[t]he sole reason that Governor Quinn, Stermer, and Haddox [decided] to terminate the employment of the Former Arbitrators was because of the lawsuit that they brought on July 12, 2011." (Compl. ¶ 27.)

On October 11, 2013, Plaintiffs filed this two-count Complaint under 42 U.S.C. § 1983.  In Count I, Plaintiffs claim Defendants violated their First Amendment rights by retaliating against them for filing the underlying lawsuit.  Count II is a supplemental state law claim for violations of the whistleblower protections in the State Officials and Employees Ethics Act.  5 ILCS 430/15-5 et seq.

## II.  JURISDICTION AND VENUE

This Court has jurisdiction over the claim brought under 42 U.S.C. § 1983 in Count I.  See 28 U.S.C. § 1331.  This Court has supplemental jurisdiction over Plaintiffs' state law claim in Count II because the claim stems from the same transaction or series of transactions as Count I.  See 28 U.S.C. § 1367(a).  Venue is proper in this Court because the events giving rise to Plaintiffs' claims took place in the Central District of Illinois.  28 U.S.C. § 1391(b).

### III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper where a complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepting all well-pleaded allegations as true and construing all reasonable inferences in the plaintiff's favor. Tamayo v. Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2008). A complaint must set forth facts that plausibly demonstrate a claim for relief. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007). Plausibility means alleging factual content that allows a court to reasonably infer that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. A complaint that does not allow the court to "infer more than the possibility of misconduct" is not entitled to relief. Id. Federal Rule of Civil Procedure 10(c) provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Accordingly, the settled law of the Seventh Circuit

is that courts evaluating the sufficiency of pleadings at the stage of a motion to dismiss must consider not only the complaint itself, but also "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." Geinosky v. City of Chicago, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

## IV. ANALYSIS

**A. Plaintiffs' First Amendment Claim: Plaintiffs' underlying lawsuit was not protected speech.**

To make out a prima facie case for First Amendment retaliation, a public employee must plausibly allege that "(1) [their] speech was constitutionally protected, (2) [they] have suffered a deprivation likely to deter speech in the future, and (3) [their] speech was at least a motivating factor in the employer's action." Massey v. Johnson, 457 F.3d 711, 716 (7th Cir. 2006) (other citations omitted). At issue here is whether the underlying lawsuit was constitutionally protected speech.

Generally, a public employee's lawsuit is protected speech if the employee is speaking "as a citizen on a matter of public concern." Borough of Duryea v. Guarnieri, 131 S. Ct. 2488, 2501

(2011)(adopting public concern test for both Petition Clause and Speech Clause); Zorzi v. County of Putnam, 30 F.3d 885, 896–97 (7th Cir. 1994)("If a public employee is retaliated against for filing a lawsuit, the public employee has no First Amendment claim unless the lawsuit involves a matter of public concern."). If Plaintiffs' underlying lawsuit did not involve a matter of public concern, then the analysis stops. There can be no First Amendment violation without protected speech. Garcetti v. Ceballos, 547 U.S. 410, 418 (2006).

Defendants do not dispute that Plaintiffs were acting as citizens and not pursuant to their official arbitrator duties when they filed the underlying lawsuit. *Cf.* Garcetti, 547 U.S. at 421 ("[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes . . . .") The question, then, is whether the underlying lawsuit was a matter of public concern.

Whether Plaintiffs spoke on a matter of public concern is a question of law requiring the Court to examine "the content, form, and context" of the speech, on the basis of the record as a whole. Connick v. Myers, 461 U.S. 138, 147 (1983). In the Seventh

Circuit, the content of speech is the most important of these three factors. Delgado v. Jones, 282 F.3d 511, 517 (7th Cir. 2002).

"The 'public concern' element is satisfied if the speech can fairly be said to relate to a matter of political, social, or other concern to the community, rather than merely a personal grievance of interest only to the employee." Gustafson v. Jones, 290 F.3d 895, 907 (7th Cir. 2002). For example, depending on the context and form, lawsuits about government waste, fraud, and systemic misconduct can be of public concern. Zorsi v. County of Putnam, 30 F.3d 885, 897 (7th Cir. 1994)(lawsuit that plaintiff was fired for political speech was a matter of public concern); Auriemma v. Rice, 910 F.2d 1449 (7th Cir. 1990)(reverse discrimination suit by white police officers was matter of public concern); Chicago United Indus., Ltd. v. City of Chicago, 685 F.Supp.2d 791, 813 (N.D. Ill. 2010)(public health, safety and waste of taxpayer funds could be matters of public concern).

However, a public employee's speech motivated solely by private interests is not protected speech, even if the speech is relevant to a public issue. Kristofek v. Village of Orland Hills, 712 F.3d 979, 986 (7th Cir. 2013)("'speech of public importance is only

transformed into a matter of private concern when it is motivated *solely* by the speaker's personal interests.'" (quoted cite omitted)(emphasis in original). If the "'only point of the speech was 'to further some purely private interest'" or "'addresses only the personal effect upon the employee'", then the speech is not of public concern for First Amendment purposes. <u>Gustafson v. Jones</u>, 290 F.3d 895, 908 (7th Cir. 2002)(quoted cite omitted).

Yet, that a lawsuit seeks to vindicate a personal interest does not automatically make the lawsuit solely personal. Every lawsuit necessarily involves a plaintiff's personal interests: legal standing would not exist otherwise. Similarly, seeking personal remedies like damages or reinstatement does not necessarily mean that the lawsuit is purely personal. <u>Zorzi</u>, 30 F.3d at 897.

Defendants argue that Plaintiffs' underlying lawsuit was solely personal, therefore, not protected by the First Amendment. Plaintiffs counter that their underlying lawsuit addressed public concerns regarding legislative reforms to the workers' compensation system. Plaintiffs acknowledge that they had personal motives for filing the underlying lawsuit, but they also assert that they pursued the suit, in part, because they felt it was "important to, in a public

forum, hash out concerns that they had regarding the workers' compensation reforms and to outline that the governor of the State of Illinois had violated the United States Constitution." (Compl. ¶ 21.) Plaintiffs also allege that reform of the workers' compensation system was a subject receiving extensive media coverage around the time they filed the underlying lawsuit.

In the Court's opinion, the issue is a difficult one. <u>Zorzi v. County of Putnam</u>, 30 F.3d 885, 896 (7th Cir. 1994)("This question is not always easy, however, as, '[m]atters of public concern' are rarely so easily discerned.")(quoted cite omitted). This case does not easily fit into the cases Defendants cite which hold that a lawsuit by a single, disgruntled employee is not protected speech. *See, e.g.,* <u>Yatvin v. Madison Metropolitan School Dist.</u>, 840 F.2d 412 (7th Cir. 1988). Plaintiffs' underlying lawsuit involves a statutory constitutional challenge, which, if successful, would have affected all the arbitrators, not just Plaintiffs.

However, after careful consideration, the Court concludes that the underlying lawsuit was not speech on a public concern, even accepting as true Plaintiffs' allegations that they were motivated by both public and private concerns.

Plaintiffs make no reference to public concerns or public benefit in their underlying lawsuit, nor are any evident. They allege that the law is unconstitutional only because the law might deprive them personally of their jobs without procedural due process. They seek for the law to be held unconstitutional as applied to them. No allegations of government malfeasance, waste, or fraud are in the underlying suit. The thrust of the underlying complaint is that the law was changed to Plaintiffs' detriment. Neither the "market place of ideas" nor the "vitality of public debate" would be affected by concluding that Plaintiffs' underlying suit was not protected First Amendment activity. <u>Yatvin v. Madison Metropolitan School Dist.</u>, 840 F.2d 412, 419 (7th Cir. 1988)("We are as reluctant to federalize the law of retaliatory dismissal . . . as we are to federalize the law of public contracts.").

While the underlying lawsuit may have engendered some public interest about the worker's compensation system, that does not change the character of Plaintiffs' underlying lawsuit. Nor does Plaintiffs' alleged motivation to publicly air worker compensation issues change the character of the underlying lawsuit. Plaintiffs' *expression* of their concern was purely personal—to protect their

jobs and reputations. Bivens v. Trent, 591 F.3d 555, 561 (7th Cir. 2010)("'if the speech concerns a subject of public interest, but the *expression* addresses only the personal effect upon the employee, then as a matter of law the speech is not of public concern.'")(*italics* in original, quoted cite omitted); *cf.* Zorzi v. County of Putnam, 30 F.3d at 896 (lawsuit "exposed areas of alleged misfeasance in the running of the Putnam County Sheriff's Office").

The Court does not see any potential societal impact from the underlying lawsuit that might render it a matter of public concern. *See, e.g.,* Anderer v. Jones, 385 F.3d 1043, 1053 (7th Cir. 2004)(speech and lawsuit about false arrest was not protected speech, even though plaintiff alleged that he was concerned about "'pervasive and systemic'" misconduct of police department). The Court agrees that legislative reform of worker's compensation in Illinois may be a matter of public interest, but the point of Plaintiff's underlying lawsuit cannot fairly be said to be about worker's compensation reform from a public view standpoint. Nothing about the underlying lawsuit was "designed to encourage public debate." Carreon v. IDHS, 395 F.3d 786, 793 (7th Cir. 2005)(public employee's Title VII lawsuit against employer was not protected

speech). Nothing in the underlying lawsuit "inform[ed] the public debate on an issue of legitimate interest to the public at the time it is published." Milwaukee Deputy Sheriff's Ass'n v. Clarke, 574 F.3d 370, 381 (7th Cir. 2009)(deputy's article about sheriff was not protected speech).

Plaintiffs argue that a ruling on the public concern question is premature, but Plaintiffs do not explain what further facts are needed to make the determination. Their underlying lawsuit is appropriate for judicial notice, and the Court accepts as true Plaintiffs' allegations about their motives in bringing the underlying suit, as well as Plaintiffs' allegations that they were terminated because of their underlying lawsuit. The Court already has all the relevant facts about the "context, form, and content" of the speech at issue. In short, even accepting Plaintiffs' allegations as true, as a matter of law, their underlying lawsuit is not protected speech.[3]

---

[3] A plausible inference that Plaintiffs were terminated because of their lawsuit is difficult to draw, given that Plaintiffs do not allege that they were the only arbitrators terminated. However, the Court need not address that issue or give leave to amend because the underlying lawsuit was not protected speech regardless of the motive behind the terminations. The Court does note, for curiosity's sake, that a press release from the Illinois Government News Network reported that nine sitting arbitrators were not reappointed. www3.illinois.gov/PressReleases (last visited 3/16/15). The four plaintiffs in this suit were part of those nine. John Dibble was also not reappointed, but he did not file his lawsuit in the Southern District of Illinois until after his termination. Interestingly, one of the original plaintiffs in the underlying suit, Peter Akemann, was reappointed, according to the press release.

The Court's holding is narrow. The Court is not holding that a lawsuit by a public employee challenging the constitutionality of a state law is per se unprotected speech. The Court is holding only that the challenge, *as expressed by Plaintiffs in their underlying suit,* is not protected speech.

**B.  Even if Plaintiffs do state a viable First Amendment retaliation claim, Defendants are entitled to qualified immunity from damages.**

Qualified immunity shields government officials from suit for performing discretionary functions unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A right is clearly established if "'every reasonable official would have understood that what he is doing violates that right.'" Ashcroft v. al-Kidd, --- U.S. ---, 131 S. Ct. 2074, 2083 (2011) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). Abstract statements of law are not enough. Volkman v. Ryker, 736 F.3d 1084, 1090 (7th Cir. 2013)("The Supreme Court has 'repeatedly told courts ... not to define clearly established law at a high level of generality,'")(quoting Ashcroft v. al-Kidd, 131 S.Ct. 2074 (2011). "[E]xisting precedent must have placed the statutory

or constitutional question beyond debate." Al-Kidd, 131 S. Ct. at 2083.

Plaintiffs bear the burden of citing the case or cases which clearly establish that their underlying lawsuit was protected speech. Chasensky v. Walker, 740 F.3d 1088, 1095 (7th Cir. 2014). They cite to cases that establish the general proposition that the First Amendment prohibits retaliation against a public employee for engaging in protected speech. Plaintiffs cite no case close enough to this case for the Court to conclude that their underlying lawsuit was so obviously protected speech that the question was beyond debate when Plaintiffs were terminated.

Whether the underlying lawsuit was protected speech is arguably debatable, in the Court's opinion, which means that qualified immunity is warranted. Zorzi and Auriemma may fall on Plaintiffs' side; Yatvin, Andover, Carreon and other cases may fall on Defendants' side. However, none are directly on point or close enough to clearly establish that the underlying lawsuit was protected speech. In short, a reasonable official would not have known beyond debate that Plaintiff's underlying lawsuit was protected speech.

Qualified immunity does not defeat a claim for injunctive relief, as Plaintiffs point out. The parties do not address whether the injunctive relief Plaintiffs seek—a job comparable to their prior jobs—could still be awarded, given the change in administration. Therefore, the Court declines to address the issue.

**C. With no federal claim remaining, the Court declines to exercise supplemental jurisdiction over Count II.**

In light of the Court's ruling that Plaintiffs state no federal claim, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claim (Count II). 28 U.S.C. § 1367(c)(3)(district courts may decline to exercise supplemental jurisdiction if "all claims over which it has original jurisdiction" are dismissed); <u>Kolbe & Kolbe Health & Welfare Benefit Plan v. Medical College of Wisconsin</u>, 657 F.3d 496, 505 (7th Cir. 2011)(state supplemental claims usually dismissed without prejudice if all federal claims as dismissed before trial).

IT IS ORDERED:

(1) Defendants' motion to dismiss is granted in part and denied in part (4).

(2) Plaintiffs' Count I is dismissed for failure to state a federal claim.

(3) The Court declines to exercise jurisdiction over Plaintiffs' Count II.  Accordingly, Count II is dismissed, without prejudice.

(4) This case is closed.  The clerk is directed to enter a judgment pursuant to Federal Rule of Civil Procedure 58.

ENTER:  March 23, 2015

FOR THE COURT:      **s/Sue E. Myerscough**
　　　　　　　　　　SUE E. MYERSCOUGH
　　　　　　　　　UNITED STATES DISTRICT JUDGE